1

2

3

4

5
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

7
FRED E. ADAMS,                      )
                                    ) No. CV-06-3078-CI
8
        Plaintiff,                  )
                                    ) ORDER GRANTING PLAINTIFF'S
9
v.                                  ) MOTION FOR SUMMARY JUDGMENT
                                    ) AND REMANDING FOR FURTHER
10
MICHAEL J. ASTRUE, Commissioner     ) PROCEEDINGS
of Social Security,                 )
11                                  )
        Defendant.                  )
12                                  )
                                    )
13

14      BEFORE THE COURT are Plaintiff's Motion for Summary Judgment

15 (Ct. Rec. 23) and Defendant's Motion for Summary Judgment (Ct. Rec.

16 27).  Plaintiff filed a reply on May 15, 2007. (Ct. Rec. 29.)  The

17 court noted the matter for hearing without oral argument on May 21,

18 2007. (Ct. Rec. 22.)  Attorney D. James Tree represents Plaintiff;

19 Special Assistant United States Attorney Richard M. Rodriguez

20 represents the Commissioner of Social Security ("Commissioner").

21 The parties have consented to proceed before a magistrate judge.

22 (Ct. Rec. 7.)  After reviewing the administrative record and the

23 briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for

24 Summary Judgment (Ct. Rec. 23) and **REMANDS** the matter to the

25 Commissioner for further proceedings.  Defendant's Motion for

26 Summary Judgment is **DENIED**.  (Ct. Rec. 27).

27                              **JURISDICTION**

28      Plaintiff protectively applied for Disability Insurance

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 1

Benefits ("DIB") on November 16, 2000, alleging an onset date of September 16, 2000. (Tr. 70-72.) Also on November 16, 2000, Plaintiff applied for Supplemental Security Income benefits, but this application is not included in the current record. (Tr. 3, 225.) These concurrent applications were denied initially and on reconsideration. (Tr. 57-59.) The first hearing before Administrative Law Judge ("ALJ") Verrell Dethloff was held on September 25, 2001. (Tr. 45-56.) In a decision dated October 1, 2001, the ALJ found Plaintiff not disabled. (Tr. 22-36.) The Appeals Council denied review on January 25, 2002. (Tr. 4-5.) Plaintiff filed a claim in the district court. Shortly after the Appeals Council denied review, on February 7, 2002, Plaintiff protectively filed a second DIB application dated February 26, 2002. (Tr. 386, 387-389.) This claim also was denied initially and on reconsideration. On April 9, 2003, a second hearing was held before ALJ Dethloff. (Tr. 555-570.)

On May 23, 2003, United States Magistrate Judge Lonny R. Suko reversed the ALJ's first decision and ordered the case remanded for further administrative proceedings. (Tr. 271-288.) On July 11, 2003, the ALJ issued a decision finding Plaintiff not disabled with respect to his second application. (Tr. 241-249.) On October 29, 2003, the Appeals Council granted review under the error of law provision of the regulations (20 C.F.R. § 404.970), vacated the ALJ's decision on the second claim, ordered the ALJ to consolidate the first and second claims and, on remand, issue one decision in compliance with the order of the district court. (Tr. 292-293.)

On January 30, 2006, a third hearing was held before ALJ Paul Gaughen on Plaintiff's consolidated claims. (Tr. 225, 571-611.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 2

The ALJ issued a partially favorable decision on March 20, 2006 (Tr. 225-235),[1] finding Plaintiff disabled during the closed period of September 16, 2000, through November 30, 2001. (Tr. 224, 233-234). The ALJ found that Plaintiff could not return to his past relevant work as of December 1, 2001, but could perform other work existing in significant numbers in the national economy; accordingly, the ALJ found that Plaintiff is not disabled. (Tr. 234-235.) The Appeals Council upheld the ALJ's decision. (Tr. 215-217.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on August 21, 2006. (Ct. Rec. 4.)

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 47 years old on the date of the relevant ALJ's decision. (Tr. 226.) He has a high-school education. (Tr. 601.) Plaintiff has worked as a building and grounds maintenance worker and as a painter. (Tr. 77, 596-597.) He alleges disability due to musculoskeletal pain since a four wheel ATV accident on September 16, 2000. (Tr. 72, 117, 598.)

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the

---

[1]The final page of the decision is misnumbered Tr. 224; the page should be numbered 235 and will be referred to as Tr. 235 in this decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 3

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work, but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1. If the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 4

impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS – 5

1   the Commissioner's decision, made through an ALJ, when the

2   determination is not based on legal error and is supported by

3   substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th

4   Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

5   "The [Commissioner's] determination that a plaintiff is not disabled

6   will be upheld if the findings of fact are supported by substantial

7   evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)

8   (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a

9   mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th

10  Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*,

11  888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of*

12  *Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

13  Substantial evidence "means such evidence as a reasonable mind might

14  accept as adequate to support a conclusion." *Richardson v. Perales*,

15  402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences

16  and conclusions as the [Commissioner] may reasonably draw from the

17  evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289,

18  293 (9th Cir. 1965). On review, the court considers the record as a

19  whole, not just the evidence supporting the decision of the

20  Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)

21  (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

22      It is the role of the trier of fact, not this court, to resolve

23  conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence

24  supports more than one rational interpretation, the court may not

25  substitute its judgment for that of the Commissioner. *Tackett*, 180

26  F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

27  Nevertheless, a decision supported by substantial evidence will

28  still be set aside if the proper legal standards were not applied in

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 6

1  weighing the evidence and making the decision. *Brawner v. Secretary*

2  *of Health and Human Services*, 839 F.2d 432, 433 (9ᵗʰ Cir. 1987).

3  Thus, if there is substantial evidence to support the administrative

4  findings, or if there is conflicting evidence that will support a

5  finding of either disability or nondisability, the finding of the

6  Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-

7  1230 (9ᵗʰ Cir. 1987).

8                          **ALJ'S FINDINGS**

9       The ALJ found at the onset that Plaintiff meets the

10  nondisability requirements and is insured for disability benefits

11  through December 31, 2004, with respect to his DIB claim. (Tr. 226.)

12  The ALJ found at step one that Plaintiff has not engaged in

13  substantial gainful activity during any time at issue. (Tr. 227.)

14  At step two, the ALJ found that from September 16, 2000, through

15  November 30, 2001, Plaintiff suffered from the severe impairments of

16  severe spinal compression fractures and osteoporosis. (Tr. 229,

17  233.) At step three, the ALJ concluded that during this period, the

18  severity of Plaintiff's impairments medically equaled Listing

19  impairment 1.04A. (Tr. 229, 233.) As of December 1, 2001, the ALJ

20  found that Plaintiff was post compression fractures, the fractures

21  had healed, and he suffered from severe osteoporosis and residual

22  acute angle kyphosis at L1 and hypokyphosis. (Tr. 229, 233.) The

23  ALJ found that, while these impairments were severe, they no longer

24  met or medically equaled the severity of a Listing impairment. (Tr.

25  229, 233.)

26       At step four, after finding Plaintiff's testimony regarding his

27  limitations not fully credible, the ALJ found that Plaintiff's pain

28  precludes him from work requiring lifting more than 10 pounds,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 7

1  sitting more than 3 hours at a time, standing or walking more than
2  an hour at a time, standing and walking more than 2 to 3 hours in an
3  eight-hour day, squatting down, or working at production pace.
4  (Tr. 231.)  The ALJ found at step four that Plaintiff was unable to
5  perform his past relevant work.  (Tr. 231.)  At step five, the ALJ
6  asked a vocational expert (VE) if jobs exist in the national economy
7  that a person of Plaintiff's age, education, past relevant work and
8  RFC could perform.  (Tr. 232.)  The VE opined that such a person
9  could work as a cashier or telemarketer. (Tr. 232.)    Using the
10 Medical-Vocational Rules as a framework, and based on the testimony
11 of the vocational expert, the ALJ found that there are a significant
12 number of jobs in the national economy that Plaintiff can perform,
13 such as telemarketer and cashier.  Accordingly, the ALJ found that
14 as of December 1, 2001, Plaintiff was not disabled as defined by the
15 Social Security Act. (Tr. 232-235.)

16                                **ISSUE**

17     Plaintiff contends that the Commissioner erred as a matter of
18 law by failing to meet his burden at step five.  He argues that the
19 ALJ failed to identify specific jobs within Plaintiff's RFC.  He
20 alleges that (1) the VE's testimony contradicted the DICTIONARY OF
21 OCCUPATIONAL TITLES ("DOT"), and (2) the jobs identified by the VE do
22 not exist in significant numbers at the unskilled level.  Plaintiff
23 alleges that the ALJ committed reversible error by relying on the
24 VE's testimony without asking about any possible conflict with the
25 DOT.  (Ct. Rec. 25 at 10, 12-19; Ct. Rec. 29 at 3-10.)

26     The Commissioner opposes the Plaintiff's Motion and asks that
27 the ALJ's decision be affirmed. (Ct. Rec. 28 at 6-14.) The
28 Commissioner concedes that the ALJ erred by failing to question the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 8

VE "concerning the perceived discrepancy between the level of skill necessary to perform the job of telemarketer versus the expert's testimony that the job could be learned with on the job training," but argues that the error is harmless. (Ct. Rec. 28 at 13-14, citing Tr. 605, 224-234.)

## DISCUSSION

At step five the ALJ presented three hypotheticals to the VE. The first, apparently based on the opinion of testifying medical expert Daniel Girzadas, M.D., assumed an ability to work at the full range of light work. In response to the first hypothetical, the VE opined that a person with an RFC for light work could work as a production assembler and cafeteria worker. (Tr. 603-604.) The parties agree that the ALJ ultimately adopted the second, more limited, RFC:

> Commencing December 1, 2001, the claimant . . . was able to perform work requiring lifting no more than 10 pounds, sitting no more than 3 hours at a time, standing no more than 1 hour at a time, walking no more than 1 hour at a time, standing and walking no more than 2 to 3 hours in an 8 hour workday, [no] squatting down, or working at production pace.

(Tr. 233-234.)

The ALJ's second hypothetical, consistent with the RFC outlined above, asked the VE to assume the following limitations:

> The individual could do a range of light to sedentary work. He cannot work at a production rate pace, that being the pace normally associated with light industry. In a workday he can walk for no more then [sic] about one hour before he'd need to discontinue. Standing would be the same. He can sit for about three hours before he needs to adjust positions. If built on a sit/stand alternating option he can meet the requirements of a workday, but he can't be on his feet standing or walking for most of a workday. Assume a capacity for being on the feet, however, for at least two to three hours total in the eight-hour day. Also his ability to lift and carry objects in performing basic work activities is for 10

pounds maximum, not 20.  And the individual can't do work
activities requiring him to squat down.

(Tr. 604-605.)  The VE opined that, while the jobs identified for a

person with an RFC for the full range of light work would be beyond

the second hypothesized person's capabilities, there were other jobs

that a person with these limitations could perform:

> There would be some [jobs], not a large number.  The
> occupational base is fairly small at this point.  We'd be
> looking most probably at unskilled, sedentary positions.
> Examples include some unskilled, sedentary cashier
> positions and in Washington there would be about 6,000 of
> these, nationally about 300,000.  There would be some what
> we would call telemarketer positions, they're not
> (INAUDIBLE) sales but handling phones for incoming or
> outgoing calls.

(Tr. 605.)  Without being asked about the DOT, the vocational expert

continued:

> This [telemarketer position] is listed [in the DOT] as
> semi-skilled with an SVP[2] of 3, but based on labor
> market  research conducted in our office the job is
> typically open to people who have a high school education
> and some work history and training is provided on the job.
> In Washington there are about 12,000 of these jobs,
> nationally, well, somewhere over 100,000.

(Tr. 605-606.)  After the ALJ completed his questioning of the VE,

he gave Plaintiff's counsel the opportunity for further questioning.

Counsel declined.  (Tr. 606.)

Plaintiff argues that the two jobs identified by the VE and

adopted by the ALJ are not appropriate because neither is unskilled

(an SVP of 1-2).[3]  The DOT lists cashier as skilled (referring to

---

[2]Specific Vocational Preparation.

[3]Using the skill level definitions in 20 C.F.R. §§ 404.1568 and

416.968, unskilled work corresponds to an SVP of 1-2.  SSR 00-4p.

An SVP of 2 consists of training that lasts beyond a short

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 10

cashier I, SVP-5) and telemarketer, semi-skilled (referring to telephone solicitor, SVP-3).  (Ct. Rec. 25, Ex. C at 2, 14-15; Ct. Rec. 25, Ex. A at 2, 15).

Plaintiff is correct that the DOT lists telemarketing as SVP 3.[4] This was known to the ALJ and to the VE because the VE pointed out the divergence in her testimony without being asked.  (Tr. 605.) She further testified her opinion that the hypothesized person would (nonetheless) be able to work as a telemarketer was based on the results of her office's labor market research.  The labor market research relied on by the VE is not part of the record.

In *Massachi v. Astrue*, ___ F.3d ___, No. 05-55201, 2007 WL 1377614 (9th Cir. May 11, 2007), the court examined the ALJ's duty to ask the VE whether her testimony is consistent with the DOT:

> For the first time, we address the question whether, in light of the requirements of SSR 00-4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the *Dictionary of Occupational Titles*.  We hold that an ALJ may not.  In so doing, we join the Third, Seventh, and Tenth Circuits.  We also follow our own precedent.
>
> SSR 00-4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary of Occupational Titles*]."  SSR 00-4p further provides that the adjudicator "*will* ask" the vocational expert "if the evidence he or she has provided" is consistent with the [*Dictionary of Occupational Titles*] and obtain a reasonable explanation for any apparent conflict.

demonstration up to and including 1 month; an SVP of 3 consists of training lasting more than a month and up to and including 3 months. SSR 00-4p.

[4]DICTIONARY OF OCCUPATIONAL TITLES, No. 299.357-104.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 11

Our holding in *Johnson v. Shalala*, [60 F.3d 1428, 1435 (9th Cir. 1995)] is consistent with these requirements. In *Johnson*, which predated SSR 00-4p, we held that "an ALJ may rely on expert testimony which contradicts the [*Dictionary of Occupational Titles*], but only insofar as the record contains persuasive evidence to support the deviation." [*Id.*] The district court in *Johnson* was aware that the vocational expert's testimony deviated from the *Dictionary of Occupational Titles*, but justifiably relied on the expert's testimony because the expert gave "persuasive testimony of available job categories in the local rather the national market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." [*Id.*] As a result, the vocational expert's testimony left no "unresolved potential inconsistenc[ies] in the evidence." [*Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006)]. SSR 00-4p simply goes one step further, explicitly requiring that the ALJ determine whether the expert's testimony deviates from the *Dictionary of Occupational Titles* and whether there is a reasonable explanation for any deviation.

The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the *Dictionary of Occupational Titles*. In making disability determinations, the Social Security Administration relies primarily on the *Dictionary of Occupational Titles* for "information about the requirements of work in the national economy." The Social Security Administration also uses testimony from vocational experts to obtain occupational evidence. Although evidence provided by a vocational expert "generally should be consistent" with the *Dictionary of Occupational Titles*, "[n]either the [*Dictionary of Occupational Titles*] nor the [vocational expert] . . . evidence automatically 'trumps' when there is a conflict." Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*.

Here, the ALJ did not ask the vocational expert whether her testimony conflicted with the *Dictionary of Occupational Titles* and, if so, whether there was a reasonable explanation for the conflict.[19] Thus, we cannot determine whether the ALJ properly relied on her testimony.[20] As a result, we cannot determine whether substantial evidence supports the ALJ's step-five finding that Massachi could perform other work.

[19]This procedural error could have been harmless, were

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 12

> there no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts, as in *Johnson*. Instead, we have an apparent conflict with no basis for the vocational expert's deviation.
>
> [20] *See Prochaska*, 454 F.3d at 736 (holding that an ALJ's failure to make the relevant inquiries under SSR 00-4p leaves "unresolved potential inconsistenc[ies] in the evidence").

*Massachi,* 2007 WL 1377614, at *2-3 (footnotes omitted).

Cases predating *Massachi* also illuminate the ALJ and VE's duties when testimony differs from the DOT. In *Johnson v. Shahala*, 60 F.3d 1428 (9th Cir. 1995), the court noted a case that was overturned when an ALJ's decision contradicted the job descriptions in the DOT; reversal was required because the Secretary offered "no explanation why those job descriptions (on which the agency regularly relies) do not apply in this case." *Johnson,* 60 F.3d at 1434 (citing *Terry v. Sullivan*, 903 F.2d 1273, 278 (9th Cir. 1990). The *Johnson* court noted that the DOT's requirements have been treated as a presumption which may be rebutted:

> *Terry* supports the proposition that although the DOT raises a presumption as to the job classification, it is rebuttable. We make explicit here that an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Here, there was persuasive testimony of available job categories in the local rather than the national market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant.
>
> . . .
>
> The DOT "is not the sole source of admissible information concerning jobs." *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). "The Secretary may take administrative notice of any reliable job information, including . . . the services of a vocational expert." *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991) (internal quotation marks and citations omitted).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 13

The DOT itself states that it is not comprehensive, but provides only occupational information on jobs as they have been found to occur, but they may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. DOT users demanding specific job requirements should supplement this data with local information detailing jobs within their community.

DOT at xiii; *see also Barker v. Shalala,* 40 F.3d at 795. . . . .

. . .

In our case, the expert testified specifically about the characteristics of local jobs . . . and found their characteristics to be sedentary. . . . in light of the DOT's own disclaimer and the administratively recognized validity of expert testimony . . ., the expert testimony may properly be used to show that the particular jobs, whether classified as light or sedentary, may be ones that a particular claimant can perform. . . . it seems an eminently appropriate use of the vocational expert's knowledge and experience.

The regulations . . . provide that the DOT classifications are rebuttable. They recognize vocational experts and several published sources other than the DOT as authoritative. 20 C.F.R. §§ 404.1566(d)(2)-(5), (e) (the use of vocational experts is particularly important where "the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue"); *see also Barker*, 40 F.3d at 795. Here, the ultimate issue of whether the claimant is disabled turns on whether her limitations are such that she cannot perform any work available in the economy. The testimony of the vocational expert was particularly important in establishing precisely which available jobs the claimant could perform. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (essential role of a VE is to "translate[ ] factual scenarios into realistic job market probabilities"). . . .

. . . [The VE's] testimony that claimant could work in two specific types of jobs despite her limitations was sufficient to overcome the presumption drawn from the DOT that a person limited to some sedentary work could not perform jobs with titles classified as "light." *See Sample*, 694 F.2d at 643-644 (as long as the hypothetical question by the ALJ is properly based on all relevant evidence in the case, the testimony of the vocational expert is valuable).

*Johnson,* 60 F.3d at 1435-1436.

In this case, the court is unable to ascertain whether persuasive evidence supports the VE's divergence from the DOT because the evidence on which she relied is not part of the record. In addition, there is no questioning by the ALJ or counsel to describe the study. The error with respect to the telemarketer position could have been harmless if the VE had provided sufficient support for her conclusion that divergence was appropriate.[5] *See Massachi*, at *3 n.19 ("[t]his procedural error could have been harmless, . . . if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts").

The VE correctly identified the conflict between the DOT's listing of the telemarketer job (training of 1-3 months) and Plaintiff's RFC for unskilled work (training of one month or less). (The exertion level for this position is not at issue because it is listed as sedentary.) The VE attempted to provide support for adopting her conclusion rather than the DOT's: labor market research by her office showing that a high-school graduate with some work experience could work as a telemarketer, with training provided on the job. (Tr. 605.) As noted, Plaintiff is a high-school graduate with work experience. When the VE testified that the DOT lists the

---

[5] An error is harmless when the correction of that error would not alter the result. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995). Further, an ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 15

job of telemarketer "as semi-skilled with an SVP of 3," she identified the divergence between Plaintiff's RFC for unskilled work (SVP 1-2) and the DOT (SVP 3). (Tr. 605.) The only difference between Plaintiff's RFC and the DOT's telemarketing description is the length of training time. It is difficult to know why the VE testified to a divergence from the DOT unless she was relying on the only point of divergence between them, the length of training time. However, because the basis of the VE's divergence is unclear and requires remand for clarification, on remand the VE should also explicitly address the length of time needed to learn the telemarketing job.

As noted, the lack of persuasive evidence supporting the VE's testimony is underscored by the lack of follow up questioning at the hearing. Neither the ALJ questioned the VE about the data underlying the study she relied on; nor did counsel. The VE's testimony was ambiguous in that she inadequately explained her basis for divergence from the DOT.

This record reveals that the ALJ erred by failing to ask the VE if there was a reasonable explanation for her conflict with the DOT; such an error is not harmless because the court cannot ascertain whether the ALJ's finding at step five is supported by substantial evidence. *See Massachi*, at *3 n.19. The ALJ was required to clarify the basis of the VE's reason for diverging from the DOT; simply referring to a study without further elaboration does not constitute persuasive evidence. Substantial evidence supporting the ALJ's step five finding that Plaintiff could perform other work is required. The record as presented does not show that the ALJ's step five finding is supported by substantial evidence.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 16

1    Remand was required in *Massachi* because the ALJ failed to ask

2  the VE if her evidence differed from the DOT (and if so, to explain

3  the conflict).   *Massachi*, at *3.   The court could not determine

4  whether the ALJ properly relied on the VE's testimony.   As a result,

5  the Court was unable to determine whether substantial evidence

6  supported the ALJ's step-five finding that Massachi was able to

7  perform other work.   *Id*.   Remand is required in this case for the

8  same reason.

9    This issue is dispositive.   The court need not consider

10  Plaintiff's argument with respect to his ability to work as a

11  cashier.   On remand the position of cashier may again be considered.

12  20 C.F.R. § 416.966(b).

13                              **CONCLUSION**

14    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 23)** is

15  **GRANTED.**   This court finds that the ALJ's step five finding that

16  Plaintiff can perform other work is not supported by substantial

17  evidence.   The case is remanded for further proceedings to determine

18  whether there are other jobs Plaintiff could  perform as of December

19  1, 2001.   Accordingly,

20        **IT IS ORDERED**:

21        1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 23)** is

22  **GRANTED.**   The matter is remanded to the Commissioner of Social

23  Security for further proceedings consistent with this decision and

24  sentence four of 42 U.S.C. §§ 405(g).

25        2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 27)** is

26  **DENIED.**

27    The District Court Executive is directed to file this Order,

28  provide copies to counsel for Plaintiff and Defendant, enter

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 17

judgment in favor of Plaintiff, and **CLOSE** this file.

DATED June 26, 2007.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE